DORIS JEANS PRICE v. W. B. BUNN AND WIFE, ADDIE Y. BUNN, AND BUNN LAKE ESTATES, INC.

No. 7210SC258

(Filed 29 March 1972)

**1. Easements § 8— construction of easement deed — consideration of matters outside deed**

Where the language of an easement deed was plain and unambiguous, construction of the deed was a matter of law for the court, and evidence of facts and circumstances existing when the deed was executed could not be considered in such construction.

**2. Easements § 8— easement deed — contract**

An easement deed is a contract.

**3. Deeds § 15; Easements § 8— determinable easement — reversion to grantor**

A determinable easement was granted by a deed conveying an easement to back water upon the grantor's lands "forever or so long as" the grantee, his heirs or assigns use the easement, and providing that in the event the grantee "should fail to keep up and maintain the dam across Moccasin Creek, and should fail to use the rights and privileges . . . for a period of five years, the terms of this easement shall become null and void and of no effect, and the property and rights herein given, granted and conveyed shall revert to" the grantor; upon failure of the grantee or his successors in title to exercise the rights granted by the easement deed within five years after the easement was created, the easement automatically terminated and the interests and rights created thereby reverted to the grantor as a matter of law.

**4. Easements § 8; Equity § 1— determinable easement — reversion to grantor — relief in equity**

Where defendants breached a condition of a determinable easement to back up waters on plaintiff's land by rebuilding a dam when they failed to rebuild the dam or use the easement within five years after the easement was granted, equity will not relieve against a reversion of the easement to plaintiff upon the ground that much expense has been incurred in acquiring and clearing land and in rebuilding the dam after the time specified in the easement, that other owners of property adjoining the lake created by the dam have built houses along the high water mark of the lake, and that plaintiff has only six acres under water.

**5. Deeds § 15; Easements § 8— easement on condition subsequent — re-entry**

Where an easement is granted on condition subsequent, no act of re-entry by the grantor is necessary upon breach of the condition where the grantor retains possession of the land affected by the easement.

APPEAL by defendants from *Braswell, Judge,* 18 October 1971 Civil Session of Superior Court held in WAKE County.

The facts are as follows: Both the plaintiff and defendant Bunn Lake Estates, Inc., own land situated on Moccasin Creek in Wake and Franklin Counties, the plaintiff's land being north of and upstream from that of the defendant. The corporate defendant acquired title to the tract of land on Moccasin Creek known as "Strickland's Old Mill Tract" from the defendants W. B. Bunn and wife, Addie Y. Bunn, by deed dated 8 May 1967. The defendants Bunn had acquired title to this tract from one J. K. Barrow and wife by deed dated 17 April 1951.

Prior to 17 April 1951, an old "washed-out" dam had been located on the defendants' tract of land. During the summer of 1951, defendants began "to make preparations for rebuilding the dam across Moccasin Creek and began to and did clean up and cut out wood and timber" on the Strickland's Old Mill Tract; however, it was not until 1966 that the defendants actually rebuilt the dam, which they have maintained until the present. In November or December of 1966, the water impounded by this dam first backed onto approximately six acres of the plaintiff's land.

The plaintiff, in her complaint filed 3 August 1970, set forth in substance the foregoing facts and alleged:

"10) That as a result of defendants' aforesaid unauthorized and wrongful acts and the resultant encroachment and invasion of water onto plaintiff's land, and interference with the natural water flow, plaintiff has been injured in the amount of $12,000.00, and is entitled to recover said amount as damages for injuries so suffered to the time of filing this action."

In their answer and answers to interrogatories, the defendants relied upon a deed of easement to J. K. Barrow, defendants' predecessor in title, by H. P. Jeans and wife, plaintiff's predecessors in title, dated 28 December 1945, granting to Barrow, "his heirs and assigns," the "perpetual right and easement to back water upon and over the lands" of the Jeans. The pertinent portions of this easement (which was attached to defendants' Answer to Interrogatories as Exhibit A) read as follows:

"NORTH CAROLINA
WAKE COUNTY

THIS EASEMENT, made this 28th day of Dec., 1945, by H. P. Jeans and wife, Lessie Jeans, of Franklin County, North Carolina, parties of the first part to J. K. Barrow of Wake County and State of North Carolina, party of the second part.

## WITNESSETH:

THAT WHEREAS, the parties of the first part are the owners in fee simple of a certain tract of land located in Wake and Franklin Counties, North Carolina, containing 51.7 acres, more or less, . . .

WHEREAS, the party of the second part owns a tract of land on both sides of Moccasin Creek known as Strickland's Old Mill and practically South of the parties of the first parts' lands and in the direction of the flow of the water in Moccasin Creek; and

WHEREAS, the party of the second part, contemplates rebuilding the dam on his land across said creek for the purpose of creating a pond for fishing, boating, and other purposes; and whereas, when said dam is built it will back water upon the lands of the parties of the first part; and whereas the parties of the first part, have for the consideration hereinafter stated, agreed to grant unto the party of the second part, the right, privilege, and easement of so backing water upon their said lands and with other rights and privileges as hereinafter set out.

NOW THEREFORE, in consideration of the sum of Ten Dollars, to the parties of the first part, in hand paid by the party of the second part, the receipt of which is hereby acknowledged, the said parties of the first part, have given, granted, and conveyed, and do hereby give, grant, and convey to the said party of the second part, his heirs and assigns, the perpetual right and easement to back water upon and over the lands of the parties of the first part along and on both sides of said Moccasin Creek . . . together with the exclusive right in the party of the second part, his heirs and assigns to exercise full control and possession of the area so covered by water for purposes of

fishing, boating, and other purposes incidental thereto including the right to cut and dig up and otherwise clear and remove trees and underbrush and other obstructions within the area covered or to be covered by water, and to clear underbrush at points along the edge of said backed up water and to use points on edge thereof for landing of boats and other purposes incidental to fishing and boating.

\* \* \*

TO HAVE AND TO HOLD, said perpetual right and easement with full possession and control, to the party of the second part, his heirs and assigns forever, or so long as the said party of the second part, his heirs and assigns, may or will use the above rights, privileges and easement, but in the event the party of the second part, his heirs and assigns should fail to keep up and maintain the dam across Moccasin Creek, and should fail to use the rights and privileges of said property described in this easement for the period of five years, the terms of this easement shall become null and void and of no effect, and the property and rights herein given, granted, and conveyed, shall revert to the parties of the first part, their heirs and assigns. It is expressly agreed that the rights and easement herein granted is appurtenant to and runs with the land now owned by the party of the second part, as herein provided."

On 17 September 1971, plaintiff filed a "motion for Summary Judgment for Plaintiff and Notice of Hearing." A hearing on this motion was held by Judge Braswell at the Civil Session of Superior Court for Wake County beginning 18 October 1971, and the following facts, among others, were found:

"7) Defendants' asserted right to impound water over and upon the lands of plaintiff is predicated solely upon an instrument, dated, executed and acknowledged on December 28, 1945, from H. P. Jeans and wife, Lessie Jeans, to J. K. Barrow, recorded on June 8, 1951, in Book 1075, Page 358, Wake County Registry, copy of which is attached as Exhibit A to defendants' Answer to Interrogatories.

8) The language, terms and conditions of the instrument, hereinabove referred to in paragraph 7 of these findings of facts, are plain and unambiguous; and, when read and interpreted in its entirety, said instrument is construed

by the Court as requiring the exercise of the rights and privileges, therein granted, during the five-year period beginning December 28, 1945; and that, upon a failure of said rights and privileges to be so utilized within said five-year period, the terms of said instrument would become null and void and of no effect and all such rights so granted would terminate and revert to the grantors therein, their heirs and assigns.

9) That the rights granted by aforesaid instrument were not exercised and utilized during said five-year period, beginning December 28, 1945, and that the terms of said instrument became null and void and of no effect and all rights and privileges granted and conveyed by said instrument reverted to the grantors therein and their heirs and assigns.

10) Defendants have established no right or privilege to divert and impound water upon the lands of plaintiff, and that such backing and impounding of water by defendants in and upon the lands of plaintiff is wrongful and constitutes a trespass and encroachment upon plaintiff's said land.

11) Plaintiff is entitled to damages for said trespass and encroachment by defendants in such amount as may be determined by a jury upon further hearing of this matter.

12) Plaintiff's right to the relief prayed in her complaint is not barred by the statute of limitations, but her injury is limited to such damages as she has suffered during the period beginning three years next preceding the filing of this action on August 3, 1970.

13) Upon the pleadings and evidence before the Court, laches does not arise as a bar to the relief prayed by plaintiff in her complaint."

Upon these and other findings, Judge Braswell concluded as a matter of law:

"1) Defendants have and are continuing to trespass and encroach in and upon the real property of plaintiff by the wrongful and improper ponding and diverting of waters upon plaintiff's said land.

2) Plaintiff is entitled to recover of defendants such damages for the wrongful encroachment and trespass to her real property as she has suffered during the period beginning three years next preceding the filing of this action on August 3, 1970, said damages to be determined by a jury upon further hearing of this matter.

3) Plaintiff is entitled to an order for the removal and abatement of said trespass and encroachment, caused by such ponding of waters, from any and all portions of plaintiff's said property; and is entitled to a permanent injunction prohibiting any such future encroachment and invasion onto her said property by defendants or interference by defendants with the natural flow of said Moccasin Creek through plaintiff's said lands.

4) There is no genuine issue as to any material fact, and plaintiff is entitled, as a matter of law, to judgment for the relief prayed."

Based upon the findings of fact and conclusions of law, Judge Braswell directed the defendants to remove any and all encoachments on the lands of plaintiff, permanently enjoined them from backing, diverting or ponding any water on the lands of plaintiff, described the lands owned by plaintiff, and restrained defendants from interfering with the natural flow of Moccasin Creek through plaintiff's lands.

To the findings of fact and conclusions of law as set forth in the foregoing judgment and to the signing and entering of the judgment, the defendants appealed to the Court of Appeals.

*Emanuel and Thompson by W. Hugh Thompson for plaintiff appellee.*

*Yarborough, Blanchard, Tucker & Denson by Hill Yarborough for defendant appellants.*

MALLARD, Chief Judge.

The first question presented by defendants in this appeal is: "Did the Court err in excluding evidence as to the subject matter, the setting of the parties, the surrounding and attendant circumstances, the object the parties had in view, and the light which the parties possessed when the Easement was

made?" This excluded evidence consisted primarily of certain portions of an affidavit made by defendant W. B. Bunn and portions of certain special proceedings and deeds concerning lands situated on both sides of Moccasin Creek and subsequently affected by the dam rebuilt by defendants. Defendants contend that this various evidence was offered "for the purpose of showing that defendants at the first reasonable opportunity acquired those lands on Moccasin Creek which lay downstream from plaintiff's land and upstream from defendants' land (that is, between plaintiff's land and defendants' land)" and "of showing the light the parties to the easement possessed when the easement was first prepared and was later executed." We hold that it was not error for the trial judge to exclude this evidence.

[1, 2] We concur in the judge's findings that the language of the easement is "plain and unambiguous" and hold that, for that reason, reference to matters outside of the deed of easement itself is not required for a correct construction. An easement deed is a contract. *Weyerhaeuser v. Light Co.*, 257 N.C. 717, 127 S.E. 2d 539 (1962).

> "It is elementary that where a contract is plain and unambiguous the construction of the agreement is a matter of law for the court. 2 Strong, N. C. Index 2d, Contracts, § 12, p. 311. In the case of *Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 127 S.E. 2d 539, it is stated: 'When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit. *Indemnity Co. v. Hood*, 226 N.C. 706, 710, 40 S.E. 2d 198. It is the province of the courts to construe and not to make contracts for the parties. *Williamson v. Miller*, 231 N.C. 722, 727, 58 S.E. 2d 743; *Green v. Insurance Co.*, 233 N.C. 321, 327, 64 S.E. 2d 162. The terms of an unambiguous contract are to be taken and understood in their plain, ordinary and popular sense. *Bailey v. Insurance Co.*, 222 N.C. 716, 722, 24 S.E. 2d 614.'" *Peaseley v. Coke Co.*, 12 N.C. App. 226, 182 S.E. 2d 810 (1971).

Considering the deed or easement in its entirety, we think that the intent of the parties and the meaning of the language they employed are sufficiently clear. The easement provides that the

party of the second part, (defendants' grantor) is to have the easement granted forever, "or *so long as*" he "may or will use the above rights, privileges and easement, but in the event . . . (he) *should fail to keep up* and maintain the dam across Moccasin Creek, and *should fail to use the rights and privileges* . . . *for the period of five years,* the terms of this easement shall become null and void and of no effect, and the property and rights herein given, granted and conveyed shall revert to the parties of the first part, their heirs and assigns. * * * " (Emphasis added.)

[3] This language states that J. K. Barrow, his heirs or assigns, had a five-year period within which to exercise the rights and privileges given by the deed. The language employed in connection with this easement is that which would be appropriate for the creation of a fee simple determinable estate. "The estate known as the fee simple determinable is created when apt and appropriate language is used by a grantor or devisor indicative of an intent on the part of the grantor or devisor that a fee simple estate conveyed or devised will expire *automatically* upon the happening of a certain event or upon the discontinuance of certain existing facts. Typical language creating such estates may specify that the grantee or devisee shall have land 'until' some event occurs, or 'while,' 'during,' or 'for so long as' some state of facts continues to exist. Upon the happening of the specified event, the fee simple determinable automatically terminates, and reverts to the grantor or to his heirs. * * * When the specified event occurs, the possessory estate of the grantee or devisee ends by operation of law automatically and without the necessity of any act or re-entry, without the institution of any lawsuit, or the intervention of any court. * * * " (Emphasis original.) Webster, Real Estate Law in North Carolina, § 35, p. 49.

> "*Determinable easements* are well recognized, as in *Wallace v. Bellamy,* 199 N.C. 759, 155 S.E. 856, where an easement was granted, to terminate upon the construction of certain streets which would provide for ingress and egress to and from the property conveyed in lieu of the way granted in the easement. Likewise, in *McDowell v. R. Co.,* 144 N.C. 721, 57 S.E. 520, an easement for the construction of a railroad was granted on condition the road was constructed in five years; this was held to be a

valid easement, subject to terminate if the condition was not met. Also, in *Hall v. Turner,* 110 N.C. 292, 14 S.E. 791, the easement was to continue so long as grantee maintained a mill at a certain location." *Dees v. Pipeline Co.,* 266 N.C. 323, 146 S.E. 2d 50 (1966). (Emphasis added.)

In the present case, when the five-year period from the date of the creation of the easement elapsed (on or about 27 December 1950) and none of the rights and privileges granted therein; primarily, the right to back water over the plaintiff's land, but including rights and privileges incidental thereto, had been exercised by J. K. Barrow or his successors in title, the easement was automatically terminated and the interests and rights created thereby reverted to the grantor and his successors in title as a matter of law.

Defendants admit that the rights that they have asserted are based upon the easement from Jeans to Barrow, but contend that the intent of the parties is not clear and that "issues as to the facts and circumstances existing at the time the easement was executed" should have been submitted to the jury for determination. We do not find from a review of the record, including that evidence which the hearing judge excluded, that any issues of fact suitable for jury determination were raised other than that of damages. The legal import of the terms of a deed of easement, except where ambiguity obscures the intent of the parties, is a matter of law for determination by the court. *Weyerhaeuser v. Light Co., supra.*

The defendants excepted to nearly all of the findings of fact and conclusions of law of the hearing judge and contend further that the court erred in its "interpretation" of the easement, in allowing the plaintiff's motion for summary judgment and in failing to grant summary judgment for the defendants. Defendants have seized upon the absence of any explicit requirement in the deed of easement requiring that the dam be rebuilt by a stated date and contend that the previously quoted provisions or limitations contained in the *habendum* clause of the deed became operative only *after* the dam was rebuilt, if it ever were rebuilt at all. Stated differently, the defendants contend that J. K. Barrow or his successors in title to the dominant tract had an indefinite period of time within which to rebuild the dam (if, in fact, they ever chose to rebuild it at all) and that until such time the rights and privileges granted by

Price v. Bunn

the deed were in full force, subject to reverting only if the owners of the dominant tract *thereafter* failed to keep up or maintain the dam for a period of five years or more. We hold that the language of the easement does not admit of such a construction.

[4] In their fourth assignment of error, the defendants contend that the court erred in failing to consider evidence "of special circumstances for equity to consider in that people other than the defendants who owned land adjoining the lake have built houses along the high water mark of the lake . . . and many people have acquired lots adjoining said lake from persons other than the defendants . . . . " Defendants also set out the contention (which is not disputed) that much expense has been incurred in acquiring and clearing land and in building the dam and contend that it is "inequitable" for plaintiff, having only six acres affected by the impoundment, to demand that the project be "discarded."

In *McDowell v. R.R.*, 144 N.C. 721, 57 S.E. 520 (1907), the plaintiff had deeded to the defendant railroad a strip of land for the purpose of building a rail line. Following the *habendum* in the deed was a provision that "if the party of the second part shall fail and neglect for a period of five years from this date to construct its line of railway over the premises hereby granted, then and in that event the title to said lands shall revert to the parties of the first part . . . . " Five years elapsed and the defendant had not constructed its line of railway over the premises.

In *McDowell*, there were considered "equities" similar to those contended for by the defendants in the case before us. The strip of land granted by the plaintiffs was only a small link in the railroad that was being built from the Georgia state line to Franklin, North Carolina. Apparently, one factor in the railroad's failure to construct the rail line on the premises in question within the five-year period was that a 1905 Act of the General Assembly required it to concentrate its work forces on another part of the line. In response to the defendant's contention that it came within "the protective principle of equity jurisprudence, whereby relief is granted against forfeiture," the Court said:

> "As we have seen, on 24 May 1906, the estate which had been conveyed by plaintiffs to defendant came to an

end and revested in the plaintiffs as if it had never been out of them; in other words, they were in, as of their original estate, by reverter on account of condition broken. Is it within the province, or the power of a court of equity to destroy the estate now in plaintiffs and revest it in the defendant? * * *

* * * Bispham says: 'But equity will not, in general, and in the absence of special circumstances calling for interference, give relief in cases of forfeiture growing out of breach of covenant for repairing, insuring, or doing any specific act.' It will be observed that while in many cases equity will not enforce a forfeiture, the *plaintiff here is not invoking equitable relief; he is standing upon his legal right—his contract.* There is nothing harsh or inequitable in the terms of the contract in the time fixed for constructing the road over his premises. During the five years the value of his land was probably impaired by the burden upon it; he may well have been willing to carry the burden during that time, but no longer; this is what his deed declares. * * * " (Emphasis added.)

In the case before us, rights and interests granted in the deed of easement dated 28 December 1945 reverted, by the terms of the instrument itself, to the plaintiff or her predecessors in title five years after the date thereof. Admittedly, the consequences of this reversion may be harsh from the viewpoint of the defendant, but the judgment complained of results solely from defendants' failure to ensure that the easement they relied upon was in force *before* they undertook the project of rebuilding the dam. We are not at liberty to extract from the plaintiff and give to the defendants, in the name of equity, an easement which these defendants have never possessed.

[5] Defendants also contend that the easement granted was on a condition subsequent, and that no right of re-entry was reserved; however, no act of re-entry by the grantor would be necessary in the case before us, because, at the time of the breach of the condition, the plaintiff's predecessors in title were *in possession* of the servient tract. *McDowell v. R.R., supra.* Furthermore, we have previously noted that the language of the deed in question indicates that the easement granted was determinable, and reverted automatically, rather than being upon a condition subsequent.

The defendants, in their brief, present a number of additional contentions which require no discussion in light of our holding that the hearing judge did not commit error in his construction of the easement relied upon by defendants.

The motion for summary judgment permitted the trial judge, in rendering his ruling on the motion, to consider the pleadings, answers to interrogatories and admission on file, together with the affidavit offered. G.S. 1A-1, Rule 56(c). The trial judge correctly found from the evidence offered that there was no genuine issue as to any material fact except damages; therefore, the court properly entered a partial summary judgment, leaving that issue for later jury determination.

Affirmed.

Judges MORRIS and PARKER concur.