RICHARD SEAWELL v. CONTINENTAL CASUALTY COMPANY AND W. R. GRACE & COMPANY

No. 8620SC687

(Filed 3 February 1987)

**Contracts § 3— settlement of insurance claims—no definite agreement**

　　In a breach of contract claim arising from attempts to settle claims for contaminated fertilizer used on tobacco, the trial court erred by submitting the case to the jury where there was no evidence that defendants and the Moore County farmers' committee entered into a settlement contract; there was, at best, an agreement to agree which was indefinite and which depended upon future agreements.

APPEAL by plaintiff from *Helms (William H.), Judge.* Judgment entered 13 November 1985 in Superior Court, MOORE County. Heard in the Court of Appeals 6 January 1987.

In 1984, plaintiff used a fertilizer manufactured by W. R. Grace & Company on his tobacco crop. Grace later discovered that some of its fertilizer contained a contaminant identified as dicamba, a herbicide. Grace and its insurer, Continental Casualty Company (CNA) began the process of investigating and adjusting the claims against them. Grace sent explanatory letters to all claimants stating that its goal was to insure that farmers did not suffer any economic loss as a result of using the contaminated fertilizer.

Plaintiff was one of a number of Moore County farmers concerned about symptoms of dicamba contamination in his tobacco crop. A large group of Moore County farmers met and elected a committee to meet with Grace concerning the contaminated fertilizer. The committee consisted of Frank Bryant, Ernest Harris, Richard Pressley and C. B. Ragsdale.

On 30 July 1984, the committee met with representatives of Grace and CNA. Plaintiff presented evidence at trial that an agreement was reached at this meeting whereby defendants would compensate the Moore County farmers for damaged tobacco under a "leaf count" or "buy on the stalk" formula. Defendants presented evidence that there was no agreement beyond assurances that the farmers would not suffer any losses attributable to the use of Grace fertilizer.

After the July 30 meeting, an adjuster for defendants came to plaintiff's fields, estimated the production and conducted a sampling of his tobacco. Plaintiff later sold his tobacco and filed suit against defendants for their refusal to settle his claim under the "leaf count" or "buy on the stalk" formula.

Plaintiff set out the following causes of action in his complaint: 1) breach of contract; 2) promissory estoppel; 3) breach of a covenant of good faith and fair dealing; and 4) tortious refusal to settle or negotiate under the agreement. Defendants moved for a directed verdict and the trial judge granted the motion on all of plaintiff's causes of action except the breach of contract claim.

The trial judge submitted the breach of contract claim to the jury which found that defendants did not enter into a settlement contract with the committee which allegedly represented plaintiff. The jury returned a verdict in favor of defendants. From judgment entered on the verdict, plaintiff appeals and defendants set out cross-assignments of error.

*Van Camp, Gill, Bryan, Webb & Thompson, P.A., by James R. Van Camp and Douglas R. Gill, for plaintiff appellant.*

*Petree, Stockton & Robinson, by W. F. Maready, John F. Mitchell and Steve M. Pharr; and Brown, Holshouser, Pate & Burke, by W. Lamont Brown, for defendant appellees.*

ARNOLD, Judge.

Rule 10(d) of the North Carolina Rules of Appellate Procedure states in pertinent part:

> Without taking an appeal an appellee may set out exceptions to and cross-assign as error any action or omission of the trial court to which an exception was duly taken or as to which an exception was deemed by rule or law to have been taken, and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.

Defendants cross-assigned error to the trial court's denial of their motion for a directed verdict on plaintiff's breach of contract claim. They contend that the trial court erred in submitting the case to the jury because the evidence was insufficient. We agree.

Offer and acceptance are essential elements in the formation of a contract and constitute the agreement of the parties. *Yeager v. Dobbins*, 252 N.C. 824, 114 S.E. 2d 820 (1960). An offer must be definite and complete, and a mere proposal intended to open negotiations which contains no definite terms but refers to contingencies to be worked out cannot constitute the basis of a contract, even though accepted. *Id.*

In the present case, there is no evidence that defendants and the Moore County farmers' committee entered into a settlement contract at the July 30 meeting. Plaintiff argues that defendants agreed to compensate the farmers for dicamba damage under a

"leaf count" or "buy on the stalk" formula. Plaintiff set out the formula as follows:

(1) The poundage production of the tobacco in the field would be estimated;

(2) The percentage of leaves showing specified contaminant related symptoms in the field would be determined by counting total leaves and damaged leaves from a sample of plants in the field and then applying the percentage from the sample to the field as a whole;

(3) The number of pounds of damaged leaves would be determined by correlating the total pounds with the percentage of damaged leaves, using a table that reflected the differences in weight of leaves by stalk position;

(4) The claimant would be paid a certain price (90¢) for each pound of damaged leaves, unless he chose to, and was able to, show that his profit per pound would have been greater;

(5) The claimant could either destroy or harvest the damaged leaves as he saw fit;

(6) Any attempt to harvest and sell them would be at his own costs and risk—he would keep the proceeds if the sale were successful, and bear the lost expense of harvest and sale if unsuccessful.

Step three of the formula requires the application of a conversion table to estimate damages. The table is essential to the operation of the formula and it is not in the record. The absence of such a necessary element indicates the indefinite nature of plaintiff's formula.

Step one of the formula requires adjusters and individual farmers to agree upon the estimate of the poundage production of the tobacco in the field. Step two requires an additional agreement between the adjusters and each farmer on the number of damaged leaves.

The entire formula is dependent upon future negotiations and agreements with each individual farmer. The evidence shows that the July 30 meeting, at best, amounted to an "agreement to

agree." Frank Bryant, a committee member, testified that "Every farmer was to be settled individually to begin with." The proposal to settle with farmers on an individual basis is not a contract.

The courts generally hold that a contract leaving material portions open for future agreement is nugatory and void for indefiniteness. *Gray v. Hager*, 69 N.C. App. 331, 317 S.E. 2d 59 (1984). "When an offer and an acceptance are relied upon to make out a contract, the offer must be one that is intended to create a legal relationship upon acceptance. It cannot be an offer to open negotiations that eventually may result in a contract." *Braun v. Glade Valley School, Inc.*, 77 N.C. App. 83, 90, 334 S.E. 2d 404, 408 (1985).

No evidence in the record indicates that a contract was entered into at the July 30 meeting. The "agreement to agree" was indefinite and depended upon future agreements. Accordingly, the trial court erred in denying defendants' motion for a directed verdict.

Inasmuch as this decision upon defendants' cross-assignment of error resolves the outcome of this case, there is no need to address plaintiff's assignments of error.

Vacated and remanded for entry of judgment in favor of defendants.

Judges PHILLIPS and ORR concur.