UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

|  |  |
|---|---|
| JOHN T. CISNE,<br><br>*Plaintiff-Appellant,*<br><br>v.<br><br>GENERAL ELECTRIC CAPITAL CORPORATION, a New York corporation,<br><br>*Defendant-Appellee.* | No. 01-1255 |

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-99-210-MU)

Argued: December 4, 2001

Decided: January 14, 2002

Before WIDENER and LUTTIG, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Victor Steven Valenti, BENDURE & THOMAS, Detroit, Michigan, for Appellant. Tracy Thomas Cottingham, III, HUNTON & WILLIAMS, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Nash E. Long, III, HUNTON & WILLIAMS, Charlotte, North Caro-

lina; Michael R. Shebelskie, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

John T. Cisne brought suit against General Electric Capital Corporation claiming commissions under an alleged express oral contract and under the procuring cause doctrine. The district court granted summary judgment in favor of General Electric Capital Corporation, and Cisne now appeals that decision. For the reasons that follow, we affirm.

I.

In the spring of 1992, the Automotive Development Group ("ADG") signed an independent contractor agreement with General Electric Capital Corporation ("GE"). GE pays a commission to independent contractors, or representatives, who sell and service GE's vehicle service program to car dealers. Consumers purchase GE vehicle service contracts to cover the cost of vehicle repairs and to extend or supplement manufacturers' warranties.

After signing the agreement with GE, ADG hired John Cisne to market the program on ADG's behalf. Under the GE-ADG agreement, Cisne was considered a sub-representative, and received a salary from ADG. The agreement stated explicitly that GE would have no obligation to pay compensation to any sub-representatives. In late spring and early summer 1992, Cisne met with Hendrick Automotive president and CEO Rick Hendrick and with Crown Motors vice president Leonard Myers. His goal was to sell Hendrick and Crown on the GE program, but he was unsuccessful. In fact, ADG signed only one

dealer — a used car dealer which never sold a service contract. GE was disappointed with ADG's performance and by August, was making plans to terminate ADG.

After learning of ADG's pending termination, Cisne contacted Mike Lawrence, GE's regional manager, to discuss the possibility of becoming a special representative. He spoke with Lawrence four times, including one in-person meeting. The pair allegedly discussed leads and strategized about closing deals. They talked about a $15 per vehicle commission on the Hendrick account but did not agree on contract terms. Lawrence says Cisne understood that GE management would have to approve Cisne because Lawrence was just a field employee who had authority only to recruit and not to sign special representatives. Cisne also signed a copy of the special representative agreement for Lawrence to turn in to his bosses.

Over the next weeks, Cisne continued to call Lawrence about the status of his application. He sent GE his resume. He continued to contact dealers. He did not, however, undertake any startup activities: he did not take a business loan, rent an office, or open a business banking account. GE eventually rejected Cisne's application, viewing him as part of ADG's failure to sign any dealers.

In 1993, months after ADG's termination, Hendrick and Crown both signed contracts with GE and began selling vehicle service contracts to consumers. Cisne now asserts that he is entitled to commissions for these contracts.

Cisne filed suit in the United States District Court for the Eastern District of Michigan in November 1998. The case was transferred to the Western District of North Carolina in May 1999. On January 18, 2001, the district court issued an order granting GE's motion for summary judgment. Cisne now appeals that order.

## II.

We review a district court's decision to grant summary judgment *de novo*. *Marshall v. Cuomo*, 192 F.3d 473, 478 (4th Cir. 1999). Once a defendant makes a properly supported motion for summary judg-

ment, the burden shifts to the plaintiff to set forth specific facts showing that there is a genuine issue for trial. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 817 (4th Cir. 1995). Summary judgment is justified if the court is satisfied that there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c).

In reviewing a motion for summary judgment, the court must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. *Sylvia Dev. Corp.*, 48 F.3d at 817. The court need consider only reasonable inferences. *Id.* at 818. To defeat summary judgment, the non-moving party must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant. *Id.*

III.

This case was originally filed in district court in Michigan and then transferred. Therefore, Michigan choice of law rules apply. 28 U.S.C. § 1404(a). In contract disputes, Michigan choice of law rules emphasize the law of the place having the materially greater interest in the matter in dispute. *See Chrysler Corp. v. Skyline Indus. Serv., Inc.*, 528 N.W.2d 698, 704 (Mich. 1995). Here, Cisne alleges he negotiated the oral contract with GE in North Carolina with performance in North and South Carolina. Michigan's only connection to the alleged transaction is Cisne's Michigan citizenship. The court finds that North Carolina law applies.

A. *Oral Contract*

We turn first to Cisne's claims that he is owed commissions under an oral contract. There is no factual or legal support for this claim.

An oral contract can be binding if its terms are sufficiently definite and certain to render the contract enforceable. *See Williams v. Jones*, 366 S.E.2d 433, 438 (N.C. 1988). There is no contract, whether oral or written, unless the parties have a meeting of the minds and mutually assent "to the same thing, in the same sense." *Horton v. Humble Oil & Ref. Co.*, 122 S.E.2d 716, 719 (N.C. 1961) (quoting *Elks v. North State Ins. Co.*, 75 S.E. 801 (N.C. 1912)).

Cisne can point to no evidence that there was a meeting of the minds, except his recollection of the preliminary conversation with Lawrence. Lawrence testified that he told Cisne that there would be an agreement only if there was a signed agreement: "I think everyone understood, too, that on these special rep agreements — I mean, I wasn't the signer. I was the grunt, the field grunt, and went out and tried to find people that could bring the package to the table[.]"

Cisne's affidavit indicates that he and Lawrence discussed only potential terms of the agreement:

> [Lawrence] also asked me at this October 15, 1992 meeting how much I would be satisfied with for the Hendrick deal. I indicated that I would accept $15.00 for each vehicle service contract sold by the Hendrick dealers in view of the anticipated large volume of sales. Lawrence said, that's fair.

Negotiations or proposals alone, however, do not constitute an offer. *Yeager v. Dobbins*, 114 S.E.2d 820, 823 (N.C. 1960); *Seawell v. Continental Cas. Co.*, 352 S.E.2d 263, 264 (N.C. Ct. App. 1987). "An offer must be definite and complete, and a mere proposal intended to open negotiations which contains no definite terms but refers to contingencies to be worked out cannot constitute the basis of a contract, even though accepted." *Seawell*, 352 S.E.2d at 264. Thus, viewing the evidence in the light most favorable to the plaintiff, Cisne's October 15 conversation with Lawrence appears to be nothing more than a discussion regarding possible contract terms. Cisne cannot demonstrate that there was a meeting of the minds, or the existence of specific and definite terms sufficient to constitute a contract. The district court did not err in finding as a matter of law that no oral contract existed.

### B. *Procuring Cause Doctrine*

We turn next to Cisne's argument that he is owed commissions under the procuring cause doctrine. This doctrine guarantees that brokers who secure sales will receive commissions. The broker will receive a commission if any act in pursuance of his authority to find a purchaser is the initiating act which is the procuring cause of the ultimate sale. *S & W Realty & Bonded Comm'l Agency, Inc. v. Duck-*

*worth & Shelton, Inc.*, 162 S.E.2d 486, 491 (N.C. 1968); *Brown v. Fulford*, 316 S.E.2d 220, 223 (N.C. 1984). The broker is the procuring cause if the sale is the direct and proximate result of his efforts or services. *Id.* "Procuring cause" refers to a cause that originates or sets in motion a series of events which, without break in their continuity, results in the prime objective of the broker. *Id.*

The GE-ADG agreement specifically provided that any sub-representatives hired by ADG did not have a contract with GE. There is no privity between principals and sub-agents hired by agents to assist them. *Colony Assoc. v. Fred L. Clapp & Co.*, 300 S.E.2d 37, 40 (N.C. Ct. App. 1983). Furthermore, an agent cannot maintain an action in his name for the benefit of the principal. *Goodrich v. Rice*, 331 S.E.2d 195, 199 (N.C. Ct. App. 1985). Thus if Cisne had attempted to secure dealerships while working for ADG, only ADG and not Cisne could maintain an action against GE for commissions due.

Cisne provided no evidence establishing that his actions caused Hendrick and Crown to sign. Rick Hendrick testified at his deposition that after an initial meeting with Cisne, he would have turned Cisne over to others at Hendrick. The testimony of these other Hendrick employees — Varge Hampton, William Musgrave, James Huzl and Gary Davis — does not support Cisne's claims of importance in making the deal. Hampton does not know Cisne or remember Cisne making any presentations to him regarding GE service contracts. Musgrave said he had no specific recollection of ever having contact with Cisne. Huzl said he had met Cisne only once and did not remember Cisne making any sales presentations to him. Davis said he had met Cisne only once and could not remember receiving any solicitations from him.

At Crown, Royce Reynolds made final executive decisions, including the decision to enroll in the GE program. He stated in his affidavit that he did not recall ever meeting Cisne, could not testify as to "aggressive solicitation efforts" by Cisne, and that to the best of his recollection, Cisne "was not the person responsible for the decision of the Crown dealerships to enter into a contract with GE to sell GE Vehicle Service Contracts." Leonard Myers testified that it was another ADG employee, and not Cisne, who initially introduced him to GE. Finally,

Cisne overlooks the fact that at that time, he was still a sub-representative of ADG.

Cisne has not shown that an oral contract existed, or that he was the procuring cause of the Hendrick and Crown accounts. For those reasons, the decision of the district court is affirmed.

*AFFIRMED*