H. W. WILLIAMSON AND J. E. THARRINGTON, D/B/AS WAKE OIL COMPANY, A PARTNERSHIP, v. H. L. MILLER, MRS. H. L. MILLER AND G. F. WICKER, TRADING AS MILLER OIL COMPANY AND/OR H. L. MILLER OIL COMPANY.

(Filed 19 April, 1950.)

1. **Contracts § 8—**

The rule that the construction given the contract by the parties in their course of dealing thereunder will be considered in its interpretation cannot be enlarged beyond the function of construction so as to supply provisions entirely omitted from the instrument.

2. **Same—**

It is the province of the courts to construe and not to make contracts for the parties.

3. **Same—**

Where there is no latent ambiguity in a contract, a patent defect of omission cannot be cured by matters *dehors* the instrument, and the construction of the contract is a matter of law for the court.

4. **Contracts § 1—**

A distributor's agreement for the sale of petroleum products which fails to stipulate in any part of the instrument the quantity of products to be sold and bought, and which nowhere binds the buyer to purchase exclusively from the seller, *is held* too vague and uncertain to give rise to a cause of action upon alleged subsequent breach on the part of the purchaser in handling the products of a competitor.

5. **Contracts § 8—**

A stipulation in a distributor's contract for the sale of petroleum products which gives the purchaser the right to display advertising matter furnished by the seller cannot be construed as making it obligatory upon the purchaser to display the advertising matter furnished.

DEFENDANT's appeal from *Williams, J.,* January 1950 Term of WAKE Superior Court.

The plaintiffs, a partnership, resident in Wake County, engaged in the sale of oils and kindred products, brought this action against the defendants, a partnership trading as Miller Oil Company and/or H. L. Miller Oil Company, retailers of oil and other products, having their principal place of business in Wake Forest, in said County, to recover damages for breach of the contract copied *infra.* The plaintiffs filed their complaint setting forth that under a contract the defendants became "authorized retailers for Republic Oil products" in the localities set forth in said contract, these products to be purchased through plaintiff, upon the terms and during the periods appearing in the contract; and at the same time agreed "to use and display Republic trademarks

or marks, and that said advertising and display would be used in connection with Republic Oil products."

The complaint alleges that notwithstanding its agreement, on or about June 20, 1949, plaintiffs learned that the Republic Oil signs and "globes" were being removed from the premises and stations mentioned and that the defendants had ceased buying the same quantity of oil products; and that plaintiffs had notified the defendants by registered mail on June 17, 1949, that the defendants should strictly comply with their contract; and that notwithstanding the said notice the defendants entered into an agreement with another company for the sale of its products.

In a separate paragraph the complaint lists the number of gallons of its products and the products sold by it to the defendants allegedly under this contract, totaling a large quantity of the plaintiff's products. They allege that they are greatly damaged by loss of profits and by the fact that their advertising matter was not displayed as agreed.

Two agreements made simultaneously are, by exhibits thereto attached, made a part of the complaint and together constitute the contract the plaintiffs claim to have been breached. The parts of these agreements upon which the controversy hinges are quoted *infra.*

The first is entitled "Authorized Distributors Agreement"; pertinent parts are as follows:

"This agreement made this 24th day of November 1947 between Wake Oil Company, a company operating in Wake County and existing under the laws of the State of North Carolina, hereinafter styled Wake Oil Co. and Miller Oil Co. of Wake Forest, County of Wake, State of North Carolina, hereinafter styled Buyer.

"WHEREAS Wake Oil Co. is a marketer of Republic branded petroleum products, and

"WHEREAS Buyer is desirous of obtaining the privilege of acting as an authorized distributor for Republic of such petroleum products through Wake Oil Co.

"WITNESSETH:

"PRODUCTS AND QUANTITY, Wake Oil agrees to sell and Buyer agrees to buy petroleum products of the kind and in the quantities listed below:

"PRODUCTS                                    QUANTITY
                                        PLUS OR MINUS 10%
Republic Ethyl Premium Gasoline ... .. ... ..... ....... Gallons
Republic Royale Housebrand Gasoline ... ...... ..... Gallons."

WILLIAMSON v. MILLER.

"PERIOD OF TIME:

"This agreement shall extend from November 18, 1947 to November 18, 1949; and unless either party shall give notice in writing to the other party at least ninety days prior to the end of the original term, this agreement shall continue in full force and effect for a further period of one year, and thereafter until either party shall give notice in writing to the other that this agreement shall terminate at the expiration of one hundred twenty days after the date of receipt of such notice."

"TRADE MARKS:

"Republic grants to the Buyer during the period of this agreement the right to use and display Republic's trade mark or marks, covering the products purchased from Wake Oil Co., but such right or privilege shall cease at the termination of this agreement.

"ADVERTISING:

"Republic shall loan to Buyer under separate bailment agreement, the globes or lenses required for gasoline and kerosene dispensing equipment used by Buyer or Buyer's customers in the distribution of such products purchased through Wake Oil Co. at Republic's option may also loan to Buyer, under separate bailment agreement, Republic's approved advertising signs. Buyer shall supply all other dispensing equipment and advertising signs."

Intervening and omitted parts of the contract relate to the price, claims for shortage, etc.

Pertinent parts of the "Bulk Sales Agreement" are as follows:

"Quantity. Wake Oil Co. agrees to sell and Buyer agrees to purchase the following petroleum products:

|  | QUANTITY PLUS OR MINUS 10% | |
|---|---|---|
| Grade | | |
| Republic Brite Lite Kerosene | ...... ............. .... | |
| Republic #2 Furnace Oil | ...... .. ... .......... . | |
| | Necessary Requirements | Bulk and Canned |
| Recolene Motor Oil | " | " |
| Ekonomee Motor Oil | " | " |
| Republic Motor Oil | " | " |

Grease may be purchased at option of Buyer.

WILLIAMSON v. MILLER.

"PERIOD OF TIME: This agreement shall become effective on the 18th day of November 1947 and continue through November 18, 1949 in full force, and thereafter from year to year upon the same terms and conditions, unless either party shall give notice in writing to the other party at least ninety days prior to the end of the original term, this agreement shall continue in full force and effect for a further period of one year, and thereafter until either party shall give notice in writing to the other that this agreement shall terminate at the expiration of one hundred twenty days after the date of receipt of such notice."

"CONSTITUTES WHOLE AGREEMENT: This instrument embodies the whole agreement between the parties and there are no oral promises or other understandings or conditions inducing its execution or qualifying its terms."

The defendants demurred to the complaint as not stating a cause of action, as follows:

"Now Come the defendants H. L. Miller, Mrs. H. L. Miller and G. F. Wicker, and demur to the complaint of the plaintiffs and move to dismiss the action, and, for grounds of demurrer and dismissal, respectfully show the Court:

"1. That the complaint fails to show a cause of action against these defendants for that it alleges that the said defendants purchased products from the plaintiffs under the purported contract in August 1949, and that summons was issued by the plaintiffs on September 1, 1949, and served on these defendants on September 1, 1949; therefore, these defendants have complied with the purported contract alleged by the plaintiffs.

"2. That the complaint fails to state a cause of action against these defendants for that the plaintiffs' Exhibit A, the purported contract on which this action is based, is not a valid and enforceable contract in that it is so vague, indefinite and uncertain in its terms that the Court cannot determine therefrom the exact meaning of said purported contract, or fix definitely the liability of the parties thereto, in that said purported contract does not provide for the sale and delivery of any specified quantity of merchandise by the plaintiffs to the defendants, and does not provide for the purchase and acceptance by said defendants of any specific or measurable quantity of merchandise from the plaintiffs, and said purported contract does not require the defendants to use any trade marks or advertising belonging to the plaintiffs, as alleged in the complaint, and in that

the provisions of said purported contract, with respect to price, are so vague, indefinite and uncertain that they are unenforceable."

On the hearing Williams, J., overruled the demurrer, allowing defendants 30 days in which to file answer on other pleadings.

From this judgment the defendants appealed, assigning as error the rendering of the judgment as set out in the record.

*Ellis Nassif for defendant, appellant.*
*Broughton, Teague & Johnson for plaintiff, appellee.*

SEAWELL, J. The gravamen of plaintiff's action, as stated in the complaint, is found to be as follows: (1) That the defendants violated their agreement to purchase oil and other mentioned products from the plaintiff, thereby causing the latter loss in profits, and because of their investment in the construction of a bulk plant and the purchase of trucks to supply defendants with products; and (2) that the defendants have broken their agreement to display on the premises plaintiff's trade marks and advertising matter, causing further damage and loss. Total damages are claimed in the sum of $25,000, which includes profits on prospective sales from June 1949 until November 24, 1950. The two instruments entitled "Authorized Distributors Agreement" and "Bulk Sales Agreement" simultaneously executed and referring to the same subject, are considered together and will be referred to as "the contract." They are by reference made a part of the complaint.

The plaintiffs, of course, cannot recover unless the purported contract was valid, binding, and enforceable in respect to those duties, the nonperformance of which is alleged as a breach constituting the exclusive cause of action.

Since the contract is made a part of the complaint, and is alleged as the sole basis of recovery, the Court will look to its particular provisions rather than the more broadly stated allegations in the complaint, or the conclusions of the pleader as to its character and meaning. Upon proper construction of these writings depends the propriety of the judgment overruling the demurrer.

1. It does not appear on the face of the contract that defendant agreed to purchase any specified quantity of oil or other mentioned products at all, at any time, or during any specified period within the "life of the contract."

The contract upon which the plaintiffs rely states with reference to this question:

"Products and Quantity, Wake Oil agrees to sell and Buyer agrees to buy petroleum products of the kind and in the quantities listed below:"

and immediately below the above quotation it sets out the products and the quantity as follows:

"Products

Republic Ethyl Premium Gasoline ....... .............. ..... Gallons

Republic Royale Housebrand Gasoline .....................:.......Gallons."

We find no reference to the quantity of products to be sold and bought in any other part of the contract. Both instruments constituting the contract have exactly the same omission with respect to the obligation of the defendants in this regard, and neither party to the "agreement" is any more bound than the other.

The appellees argue that the contract must be construed "from the four corners" but fail to point out any provision elsewhere in the contract that could reasonably supply the omission. "Looked at" from the four corners it is still a blank.

The plaintiffs sought to close the gap by setting up in their pleading that during a certain period they sold, and defendants bought, substantial quantities of the products mentioned in the contract, naming the amounts. The theory on which these allegations are laid is reflected here in the argument of the appellees that the course of dealing between the parties constitutes a practical construction placed by them on the contract and generates an inference which would save the contract from defeat and also supply a standard for measure of damages.

It is true that in a situation of doubtful interpretation of some expression found in an executory contract the *modus vivendi* or course of dealing between the parties, may have a bearing on its construction; but we have never known the principle applied to a wholesale amendment to the contract where there is no expression of the reciprocal duties to be construed. "The rule as to consideration of the construction placed on a contract by the parties is, of course, inapplicable where there is no binding contract." 17 C.J.S., "Contracts," sec. 325, p. 762. "Where a term of a contract is lacking, resort may not be had to the acts or conduct of the parties not in terms amounting to an agreement for the purpose of supplying it." 12 Am. Jur., "Contracts," sec. 249, p. 791.

We are reminded that it is the province of the Court to construe and not to make contracts for the parties. *Belk's Dept. Store v. Geo. Washington Fire Ins. Co.,* 208 N.C. 267, 180 S.E. 63.

The contract makes the buyer an authorized distributor of plaintiff's products but it nowhere binds him to purchase exclusively from the plaintiff or to deal exclusively in their products. Such a contract might have implications which the parties sought to avoid. But we need not speculate on this. The matter omitted from the contract is so important,

forming as it does the very basis of plaintiff's claim, that it must be left to treaty between the parties, by which alone, and not by judicial amendment, could there be brought about that meeting of the minds which is essential to any contract. *Elks v. Ins. Co.,* 159 N.C. 619, 75 S.E. 808; *Croom v. Goldsboro Lumber Co.,* 182 N.C. 217, 108 S.E. 735; *Sides v. Tidwell,* 216 N.C. 480, 5 S.E. 2d 316.

Here there is no latent ambiguity to be explained by matter *dehors* the record but there is a patent defect which cannot be cured by extraneous reference or matters not within the document. Its construction becomes a matter of law for the Court.

The challenge to the vagueness in the contract goes to its sufficiency as giving rise to a cause of action. Breach of an invalid contract, if that paradox could exist, gives rise to no cause of action. *Elks v. Ins. Co., supra,* loc. cit. p. 626: "If no breach in the contract could be assigned which could be measured by any test of the damages from the contract it has been said to be too indefinite to be enforceable," citing Page on Contracts, sec. 28. "To be binding, the terms of a contract must be definite and certain or capable of being made so." *Elks v. Ins. Co., supra; Sides v. Tidwell, supra.*

"If the uncertainty as to the meaning of a contract is so great as to prevent the giving of any legal remedy, direct or indirect, there is no contract." *Carver v. Brien,* 315 Ill. App. 643, 43 N.E. 2d 597; *Van Slyke v. Broadway Ins. Co.,* 115 Cal. 644.

For the reasons given we are of the opinion that the terms of the alleged contract in this vital particular are too vague and uncertain to give rise to any cause of action which could survive the demurrer.

2. Referring now to the contention that the defendant breached the terms of the contract with reference to the display of plaintiff's signs and advertising matter, an inspection of the contract does not bear out plaintiff's contentions that it was obligatory on the part of the defendant to do so. The language used in the contract with reference to these items gives the defendants the right to use the plaintiff's "globes" and to display advertising matter of the plaintiff but does not require them to do so.

For the reasons assigned, the judgment of the court below overruling defendant's demurrer must be reversed. It is so ordered.

Reversed.