FRANK J. YEAGER v. BEULAH L. DOBBINS, EXECUTRIX UNDER THE WILL OF C. N. DOBBINS, DECEASED.

(Filed 30 June, 1960.)

**1. Contracts § 25—**

Where the specific contract constituting the sole basis of the cause of action is made a part of the complaint, the sufficiency of the instrument to constitute a valid agreement must be determined in accordance with its provisions rather than the more broadly stated allegations of the complaint, or the conclusions of the pleader as to its character and meaning.

**2. Contracts § 2—**

In order to constitute a valid contract, there must be an offer which is definite and complete and an acceptance of the offer in its exact terms and sense, and a mere proposal intended to open negotiations which may ultimately result in a contract and which contains no definite terms but refers to contingencies to be worked out, is not binding even though accepted.

**3. Vendor and Purchaser § 2:    Wills § 4— Letter held insufficient to constitute contract to convey or devise.**

A letter written by the owner of a farm to his son-in-law expressing the owner's desire to divide the farm among his son-in-law and his two sons, or those of them who would like to keep the farm and work it, requesting the son-in-law to come to the farm as soon as possible, expressing the desire to turn the farm over to the son-in-law to make what he could from it, and then, when the two sons had finished school, the three could carry on from there, and suggesting that the son-in-law might not like it after a trial and that it was impossible to tell whether the sons, or either of them, would like farming, *is held* insufficient to constitute a contract or offer to convey the farm or devise it to the son-in-law.

PARKER AND HIGGINS, J.J., dissenting.

APPEAL by plaintiff from *Gambill, J.,* November Civil Term, of YADKIN.

Plaintiff's complaint is summarized as follows: Defendant is the widow of C. N. Dobbins who died 15 June 1958. She is sole devisee and legatee and executrix under the will of deceased. She is sued in her representative capacity. On and prior to 21 October 1948 plaintiff was a resident of Lansdowne, Pennsylvania, where he owned his home and was employed in the insurance business. At this time C. N. Dobbins owned a 210-acre farm in Yadkin County, North Carolina and, "in writing, contracted with and promised" plaintiff if he would give up his residence and employment in Pennsylvania, bring his family to North Carolina and take over, operate and work the farm,

Dobbins would convey or devise it to plaintiff. The contract was subject to the condition that if Dobbins' sons, Charles and James, or either of them, should join plaintiff in operating and working the farm, it would be conveyed or devised to plaintiff and such son or sons in equal shares, otherwise to plaintiff solely. In reliance upon the contract, plaintiff sold his home, gave up his employment, moved his family to the farm, lived thereon and operated and worked it until the death of C. N. Dobbins. Neither of the sons joined with plaintiff in operating and working the farm. The land was not conveyed to plaintiff, and in breach of the contract Dobbins willed it to his wife, the defendant. The farm, at the death of Dobbins, was worth $105,000.00, including $50,000.00 in improvements placed thereon by plaintiff at his own expense. Plaintiff filed claim with defendant for the sum of $105,000.00 but payment was refused.

In consequence of a motion by defendant that the complaint be made more definite and certain and that the writing relied on by plaintiff be fully set out, plaintiff filed an amendment and alleged that the writing is a letter from C. N. Dobbins to plaintiff. It was made a part of the complaint and attached thereto as an exhibit.

The letter is dated 21 October 1948, addressed to "Dear Frank" and signed, "Your dad, C. N. Dobbins." Omitting nonessentials, it is as follows:

"I wanted that you should make the decision yourself so that . . . I wouldn't feel that I had over persuaded you . . . I've been getting the corn out of the field and sowing grain, which is mighty close akin to work . . . the payoff comes next summer with the harvest.

"Now to answer more specifically your questions. I had hoped that you, Charles and James could and would take the farm over and operate it as a jointly owned piece of property. There is sufficient land and sufficient work for all of you to have a full time job. However I realize that partnerships are rather hard to make operate and it would probably be just as well or better to divide the place 3 ways even though it should be operated as an entity. Who knows for sure what James or Charles will want to do when older? They may not want to farm. You might not like it after a trial. I would like for any of you boys to have the farm only if you would keep it and work it . . .

"I would like to turn the whole thing over to you to make as much as you can until Charles gets through school and comes home; then the two of you to do likewise until James can join you and then the three of you carry on from there. It appears that I am about through except in an advisory capacity and possibly that too. I

naturally would like to have you and Grace nearby and even more especially Kathy and Christine.

"The decision is yours to make, Frank. I'd love to have you come on down as soon as possible . . .

"As for a house for you to live in, we might at odd times build one. I selected one out of the October Country Gentleman as being about what would be needed for you boys to live in. You have better ideas probably. . . .

"One thing is certain you would never be out of a job. . . .

"For my part will try to make it interesting from every angle.

"I am not sure this covers everything you wanted to know. If not I would be glad to explain further on request."

Defendant demurred to the complaint as amended on the ground that it does not state facts sufficient to constitute a cause of action, in that the action, sounding in contract, is based solely and entirely upon the above letter, which upon its face is wholly insufficient in law to constitute an offer to contract, a contract, "or any other thing upon which plaintiff can as a matter of law maintain the action."

The court sustained the demurrer. Plaintiff appealed and assigned error.

*Fletcher & Lake for plaintiff, appellant.*
*Sanford, Phillips, McCoy & Weaver for defendant, appellee.*

MOORE, J. The complaint alleges that the agreement or contract on the part of C. N. Dobbins is in writing. Plaintiff amended the complaint and alleged that the writing relied on is the letter of C. N. Dobbins dated 21 October 1948. It is not alleged that Dobbins agreed or offered to do anything more than appears in the letter.

The question for decision is whether the letter constitutes a contract or offer to contract sufficient to support an action for damages for breach of its terms.

Where the alleged contract is made a part of the complaint and is relied on as the sole basis of recovery, the court will look to its particular provisions rather than the more broadly stated allegations in the complaint or the conclusions of the pleader as to its character and meaning. *Williamson v. Miller*, 231 N.C. 722, 726, 58 S.E. 2d 743.

The inquiry here does not involve the statute of frauds, G.S. 22-2. Plaintiff alleges that the agreement on the part of C. N. Dobbins is in writing. Furthermore, the statute of frauds is an affirmative defense and must be pleaded. *Weant v. McCanless*, 235 N.C. 384, 386, 70 S.E. 2d 196. This defense may not be raised by demurrer. *Mc-*

*Campbell v. Building and Loan Ass'n.*, 231 N.C. 647, 651, 58 S.E. 2d 617.

Upon proper construction of the letter in question depends the propriety of the judgment sustaining the demurrer. The letter is not a complete contract within itself. This is obvious and requires no discussion. The real question is whether it contains a valid offer in express terms or by necessary implication, the acceptance of which and the performance of conditions therein contained give rise to a binding contract, the breach of which will support an action for damages.

In the analysis and construction of the contents of the letter, certain facts and conclusions inevitably emerge. The letter is in answer to an inquiry by plaintiff, the writer's son-in-law. As to whether he will come to North Carolina is for decision of plaintiff. Farming is hard work, the writer likes it but is about through except in an advisory capacity. He would like to have his daughter and granddaughters near him. He has two sons, Charles and James, who have not finished school.

The writer comes to the main purpose of the letter in this wise: "Now to answer more specifically your questions." Here he discusses some ideas he has concerning the farm. He *had hoped* that plaintiff, Charles and James could and would take the farm over and operate it as a *jointly owned* piece of property. There is work enough for all. However he realizes that partnerships are "hard to make operate." It would probably be as well or better to divide the place three ways but it should be operated as a unit. He doesn't know whether James or Charles will want to farm when they are older. Plaintiff might not like it if he tried it. Writer would like for any of the three boys to have the farm *"only"* if they "would keep it and work it."

It is our opinion that the foregoing portion of the letter does not comprise an offer to convey or devise the farm or any part thereof. The writer is merely discussing ideas and possibilities. He is giving background information for possible future disposition of the farm. He has reached no definite decision. He wants plaintiff and writer's sons to have the farm *only* if they should like farming, that is, "would keep it and work it." It would appear that the writer does not wish to convey the land to plaintiff, Charles or James until he is convinced they like farming and want to farm. There is no positive offer of the land on any definite conditions. The writer is reserving his decision as to the disposition of the farm until future developments disclose

the attitudes of plaintiff and the sons toward farming. This is borne out by his summary or conclusion of the matter.

The writer concludes by making the following proposal: "I would like to turn the whole thing over to you to make as much as you can until Charles gets through school and comes home; then the two of you do likewise until James can join you and then the three of you carry on from there." It is clear that writer offers an interim arrangement. Plaintiff may come to North Carolina, take over the farm and *make as much as he can* until Charles and James finish school. Then the three are to "carry on from there." There is still no offer to convey or devise. Again final decision and disposition must await developments.

"When an offer and acceptance are relied on to make a contract, 'The offer must be one which is intended of itself to create legal relations on acceptance. It must not be an offer intended merely to open negotiations which will ultimately result in a contract, or intended to call forth an offer in legal form from the party to whom it is addressed.' 1 Page on Contracts, sec. 26." *Elks v. Insurance Company,* 159 N.C. 619, 625, 75 S.E. 808. "If a proposal is one merely to open negotiations which may or may not ultimately result in a contract, it is not binding though accepted . . . Care should be taken not to construe as offers letters which are intended merely as preliminary negotiations." 12 Am. Jur., Contracts, sec. 28, p. 526; Restatement of the Law of Contracts, sec. 25, p. 31.

"In the formation of a contract an offer and acceptance are essential elements; they constitute the agreement of the parties. The offer must be communicated, must be complete, and must be accepted in its exact terms. (Citing authority). Mutuality of agreement is indispensable; the parties must assent to the same thing in the same sense, *idem re et sensu,* and their minds must meet as to all the terms." *Dodds v. Trust Co.,* 205 N.C. 153, 156, 170 S.E. 652.

We are of the opinion, and we so hold, that C. N. Dobbins did not make an offer to convey or devise the farm that will support plaintiff's contention and theory of the case. The court below properly sustained the demurrer.

It is observed that the demurrer was sustained but the action was not dismissed. G.S. 1-131. As to whether the allegations are sufficient to support a recovery for betterments or for *quantum meruit,* such inquiry does not arise on the demurrer or on this appeal. *Pamlico County v. Davis,* 249 N.C. 648, 652, 107 S.E. 2d 306; *Stewart v. Wyrick,* 228 N.C. 429, 433, 45 S.E. 2d 764.

The judgment below is

Affirmed.

PARKER AND HIGGINS, JJ., dissenting.

The original complaint alleged that C. N. Dobbins owned a farm in Yadkin County containing 210 acres. "On or about October 21, 1948, C. N. Dobbins, in writing, contracted with and promised the plaintiff that if the plaintiff would give up his employment in the insurance business and his residence in Landsdowne, Pennsylvania, would remove himself and his family to the farm described in paragraph four, . . . and would take over and operate the farm, keep it and work it, C. N. Dobbins, in consideration of the plaintiff's doing so, would convey the farm to the plaintiff prior to the death of C. N. Dobbins, or, if such conveyance was not made prior to his death, he would devise the farm to the plaintiff by his will. The contract and promise so made by C. N. Dobbins to the plaintiff were subject to the condition that if Charles N. Dobbins, Jr., and James Dobbins, the sons of C. N. Dobbins, or either of them, desired to join with the plaintiff in taking over and operating . . . the farm . . . and if they, or either of them, did so join with the plaintiff . . . C. N. Dobbins would so convey or devise the farm, in equal shares, to the plaintiff and such of his said sons as did so join with the plaintiff, . . . but if neither of his said sons so joined . . . then C. N. Dobbins would so convey or devise the entire farm to the plaintiff alone."

"On or about January 5, 1949, the plaintiff, in consideration of and in reliance upon the contract and promise of C. N. Dobbins, . . . resigned his position of employment in the insurance business . . . sold his home . . . removed . . . to Yadkin County . . . took over the operation of the farm and placed improvements thereon . . . of the value of $50,000." Neither of the sons joined the plaintiff in taking over and operating the farm. C. N. Dobbins died suddenly on June 15, 1958. "Notwithstanding his contract and promise as set forth in paragraph five, . . . and notwithstanding the full performance and fulfillment by the plaintiff of each and every condition . . . in the promise of C. N. Dobbins, . . . C. N. Dobbins did not convey or devise the farm, . . . but in breach of his contract and promise . . . devised the said farm together with all other real and personal property . . . to his wife, Beulah L. Dobbins, and appointed her the executrix of his will."

The plaintiff filed a claim against the estate for damages resulting to him from the breach of the contract on the part of C. N. Dobbins. The administrator denied the claim and the plaintiff brought this action for a breach of contract. Upon motion of defendant and order of the court the plaintiff amended the complaint by attaching the

Dobbins letter — which letter shows that it was written as a reply to the plaintiff's letter to Mr. Dobbins. The plaintiff's letter, therefore, may be competent as evidence to explain and to throw light on the Dobbins letter.

The plaintiff has alleged a contract, performance on his part, breach on the part of Mr. Dobbins, and damages. For the purpose of testing the sufficiency of the complaint, the demurrer admits all facts well pleaded. The ultimate factual allegations in a complaint must be controverted — not by demurrer, but by answer. The complaint, liberally construed, states a cause of action. When the answer and evidence are in, the court will then be in a position to determine with safety and accuracy the sufficiency of the evidence to support the plaintiff's allegation. We think the demurrer should have been overruled.