IN THE SUPREME COURT OF NORTH CAROLINA

No. 316PA22

Filed 21 March 2025

JOSEPH LANNAN and LANDRY KUEHN, on behalf of themselves and others similarly situated

v.

BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, known and distinguished by the name of THE UNIVERSITY OF NORTH CAROLINA, a body politic and corporate

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 285 N.C. App. 574 (2022), affirming an order entered on 30 June 2021 by Judge Edwin G. Wilson Jr. in Superior Court, Wake County. Heard in the Supreme Court on 22 October 2024.

> *White & Stradley, PLLC, by J. David Stradley; and Brian D. Westrom for plaintiff-appellees.*
>
> *Jeff Jackson, Attorney General, by Laura McHenry, Special Deputy Attorney General, and Lindsay Vance Smith, Deputy Solicitor General; and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jim W. Phillips Jr., Jennifer K. Van Zant, and Katarina Wong; and Dowling PLLC, by Craig D. Schauer and Troy D. Shelton, for defendant-appellant.*
>
> *Cranfill Sumner LLP, by Steven A. Bader, for North Carolina Association of Defense Attorneys, amicus curiae.*

ALLEN, Justice.

Early in the Fall 2020 semester, during the COVID-19 pandemic, North Carolina State University (NCSU) and the University of North Carolina at Chapel Hill (UNC-CH) moved their in-person classes online and effectively closed their

campuses to students. Plaintiffs filed suit as students at the universities against the Board of Governors of the University of North Carolina, seeking refunds of the mandatory fees they paid as a condition of registration. Plaintiffs also sued to recover fees paid for on-campus parking permits.

The Board moved to dismiss the lawsuit, asserting the defense of sovereign immunity, a legal doctrine that bars most legal claims against the State and its agencies. The trial court denied the motion as to plaintiffs' breach of contract claims. The Court of Appeals affirmed, in part because sovereign immunity is not a defense to a claim that the State breached a valid contract. According to the Court of Appeals, plaintiffs successfully alleged that (1) the Board—through NCSU and UNC-CH— entered into implied contracts with plaintiffs to provide fee-funded services and on-campus parking and (2) NCSU and UNC-CH breached those implied contracts by denying students access to services and facilities.

We agree with the Court of Appeals that sovereign immunity does not foreclose plaintiffs' breach of contract claims against the Board at this stage of litigation; however, we read the lawsuit to allege the existence of express—not implied— contracts between plaintiffs and the Board. We therefore modify and affirm the judgment of the Court of Appeals.

## I. Background

On 10 September 2020, plaintiff Joseph Lannan filed suit in the Superior Court, Wake County, against defendant Board of Governors of the University of

North Carolina.[1] The Board is "responsible for the general determination, control, supervision, management and governance of all affairs" of the sixteen constituent universities that make up the University of North Carolina, including NCSU and UNC-CH. N.C.G.S. §§ 116-4, -11(2) (2023). On 18 November 2020, the Chief Justice of the Supreme Court of North Carolina designated this case as exceptional pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts, assigning it to Senior Resident Superior Court Judge Edwin G. Wilson Jr.

On 3 February 2021, plaintiff Lannan and plaintiff Landry Kuehn filed an amended complaint. The amended complaint alleges the following facts regarding certain fee-related actions taken by NCSU and UNC-CH during the Fall 2020 semester. Both universities fund various student services and benefits through the imposition of mandatory fees. Students could not register for the Fall 2020 semester without paying those fees.

NCSU and UNC-CH provided information about the mandatory fees on their respective websites and in written communications to students. For example, NCSU described some of its fees as follows:

> a. **Education and Technology Fee** – This academic fee of $439.28 is used by colleges and schools to equip and operate computing and scientific laboratories which supplement classroom instruction.
>
> . . . .

---

[1] Both the original complaint and the amended complaint are framed as class action lawsuits. The class action component is not at issue here.

d. **Union Activities Board (UAB) Fee** – This fee of $19.63 supports the UAB which is the main programming body for the campus which is responsible for acquiring, scheduling, publicizing, and presenting films, speakers, and special events.

. . . .

h. **Student Center Operations Fee** – This fee of $132.39 supports the maintenance and operations of the Student Center facilities.

i. **Student Center Programming Fee** – This fee of $242.70 supports programming for the Student Centers and the Office of Institutional Equity and Diversity.

. . . .

l. **Recreational Sports Fee** – This fee of $168.85 is used to defray the cost of operating and maintaining the intramural recreational sports program and other physical education programs.

. . . .

o. **Student Health Services Fee** – This fee of $407.00 is used by the University Health Center to offer medical and counseling services to students.

p. **Transit Operations Fee** – This fee of $205.00 partially funds the campus transit system.

The universities' written communications to students included "an itemized bill which labeled . . . the services, benefits, and opportunities which NCSU and UNC-CH promised to provide in exchange for each student's . . . payment of Fall 2020 Term Student Fees." The bill "also specified the amount that each . . . NCSU and UNC-CH student was required to pay for those services, benefits, and opportunities."

Additionally, the universities offered optional parking permits that "some, but not all, Fall 2020 Term students at NCSU and UNC-CH . . . purchased." The parking permits authorized purchasers "to park their motor vehicle[s] on NCSU's and UNC-CH's convenient on-campus parking lots for the Fall 2020 Terms."

Plaintiff Lannan paid NCSU's mandatory fees when registering as a graduate student for the Fall 2020 semester. He also paid for a Fall 2020 parking permit. Plaintiff Kuehn paid UNC-CH's mandatory fees when registering as an undergraduate for the Fall 2020 semester and purchased a parking permit, though her permit was valid for the entire 2020–2021 academic year.

In August 2020, NCSU and UNC-CH "voluntarily" and "unnecessarily" took a series of drastic actions effective for the duration of the Fall 2020 semester, to include: cancelling all in-person, on-campus instruction; evicting all students from on-campus housing; severely limiting campus transportation; prohibiting students from accessing on-campus student athletic and recreation facilities; and closing libraries, student unions, dining halls, and other on-campus facilities.[2] Those actions rendered many of the facilities and services funded by the mandatory fees "of no value whatsoever" to plaintiffs and other NCSU and UNC-CH students enrolled during the Fall 2020 semester. Nonetheless, the fees "were not adjusted, pro-rated, or rebated in any way."

---

[2] The original complaint filed in this case alleges that NCSU and UNC-CH took these actions "in response to the COVID-19 pandemic." The amended complaint omits any explanation for the actions.

The amended complaint alleges two claims against the Board for breach of contract arising from the foregoing alleged facts. The first claim concerns the mandatory fees and asserts that plaintiffs "entered into express contracts . . . in which: (1) NCSU and UNC-CH offered [p]laintiffs . . . services, benefits, and opportunities . . . ; and (2) [p]laintiffs . . . accepted [the] offer and agreed to pay, and did, in fact, pay, the Student Fees for such Earmarked Services." NCSU and UNC-CH allegedly breached the contracts by stopping or curtailing the services and benefits for which plaintiffs paid. This purported breach left plaintiff Lannan with $1,288.80 in damages and plaintiff Kuehn with damages totaling $976.25.

The second breach of contract claim focuses on parking permits. Plaintiffs assert that "NCSU and UNC-CH offered to sell optional parking permits" for on-campus lot access during Fall 2020. When students purchased those permits, the amended complaint continues, they formed contracts. By closing campuses and suspending activities, the universities allegedly "rendered the . . . permits worthless." Although NCSU refunded $80 to plaintiff Lannan and UNC-CH refunded approximately $150 to plaintiff Kuehn, plaintiff Lannan has unpaid damages of $130, while plaintiff Kuehn's unpaid damages come to $150.

As an alternative to plaintiffs' contract claims, the amended complaint also alleges that the universities violated plaintiffs' property rights and constitutional rights "guaranteed by the 'law of the land' clause found in Article I, Section 19 of the North Carolina Constitution." Citing this Court's decision in *Corum v. University of*

-6-

*North Carolina*, 330 N.C. 761 (1992), the amended complaint refers to the alleged constitutional violation as a "*Corum* claim" and asserts that it entitles plaintiffs to just compensation for the unrefunded fees they paid for the Fall 2020 semester.

On 2 March 2021, the Board filed a motion to dismiss the amended complaint pursuant to Rules 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), and 12(b)(6) (failure to state a claim for relief) of the North Carolina Rules of Civil Procedure. In its motion, the Board asserted that plaintiffs' claims are barred by the doctrine of sovereign immunity, which generally prohibits lawsuits against the State except when the State has waived its immunity. The Board further contended that the amended complaint fails to allege either a claim for breach of contract or a *Corum* claim.

The trial court entered an order on 18 June 2021, granting the Board's motion in part and denying it in part. The order allowed the contract claims to proceed but dismissed plaintiffs' *Corum* claim. At plaintiffs' request, the court entered an amended order on 30 June 2021 restating its earlier ruling and certifying the dismissed *Corum* claim for immediate appeal. Both sides then sought appellate review, with plaintiffs appealing the dismissal of their *Corum* claim and the Board challenging the trial court's denial of its motion to dismiss the contract claims.

In an opinion filed on 4 October 2022, the Court of Appeals unanimously affirmed the trial court's amended order. *Lannan v. Bd. of Governors of the Univ. of N.C.*, 285 N.C. App. 574, 606 (2022). As summarized by the Court of Appeals, the

appeal presented three issues: (1) whether sovereign immunity bars plaintiffs' claims; (2) whether the trial court should have dismissed the contract claims under Rule 12(b)(6) "for failure to plead a claim for breach of contract on which relief may be granted"; and (3) whether, if plaintiffs' contract claims fail, their *Corum* claim states a valid claim for relief. *Id.* at 581. After establishing that it had jurisdiction over the appeal, *id.* at 581–86, the Court of Appeals took up the first issue.

Although the parties agreed that the State waives sovereign immunity by entering into valid contracts, the Board insisted that such contracts must be express and that plaintiffs failed to allege the existence of any express contract. In response, plaintiffs argued that they successfully alleged a contract implied in fact and that such contracts can also overcome sovereign immunity.

The Court of Appeals acknowledged this Court's holding in *Smith v. State*, 289 N.C. 303 (1976), that the State implicitly consents to be sued for breach of contract whenever it enters into a valid contract. *Lannan*, 285 N.C. App. at 585. It noted, though, that later cases such as *Whitfield v. Gilchrist*, 348 N.C. 39 (1998), "include broad language that when read literally, and taken out of context, could [appear to] exclude contracts implied in fact from the waiver of sovereign immunity." *Lannan*, 285 N.C. App. at 590. Declining to rely on this broad language, the Court of Appeals turned for guidance to several of its prior decisions that "extend[ed] *Smith* to implied in fact contracts [in] the employment context." *Id.* at 593. According to the Court of Appeals, "[t]he reasoning of those [employment] cases extends beyond the

employment context" because it "turn[s] on the similarities of express and implied in fact contracts." *Id.* In light of this precedent, the court concluded that "a contract implied in fact can waive sovereign immunity under the contractual waiver holding in *Smith.*" *Id.* at 595.

Having determined that implied-in-fact contracts can waive sovereign immunity, the Court of Appeals considered whether the amended complaint alleges such a contract. "[T]o plead a valid implied-in-fact contract," the court explained, "[p]laintiffs needed to plead offer, acceptance, and consideration." *Id.* at 597. The court reviewed the amended complaint's factual allegations and held that "[p]laintiffs properly pled each of those three elements." *Id.* Consequently, "the trial court did not err in denying [the Board's] motion to dismiss on the grounds of sovereign immunity." *Id.* at 600.

The Court of Appeals next examined the Board's argument that the trial court should have dismissed plaintiffs' contract claims under Rule 12(b)(6) for failure to state a claim for relief. Because, in its view, plaintiffs alleged a valid contract, the Court of Appeals "only need[ed] to address whether [p]laintiffs adequately pled breach to address the trial court's Rule 12(b)(6) ruling." *Id.* at 601. "Focusing only on [plaintiffs'] non-conclusory factual allegations," the court held that "[p]laintiffs adequately allege[d] a breach even though they [did] not specifically say they explicitly asked for and then were denied services; according to the allegations, they paid for services and then [NCSU and UNC-CH] barred them from accessing such

services." *Id.* at 603. It followed that "the trial court did not err in denying [the Board's] motion to dismiss [p]laintiffs' contract claims for failure to state a claim under Rule 12(b)(6)." *Id.*

Finally, the Court of Appeals disagreed with plaintiffs' contention that the trial court erred by dismissing the amended complaint's *Corum* claim. Observing that a party may not pursue a claim directly under the North Carolina Constitution when the law provides an adequate alternative remedy, the Court of Appeals pointed out that "the remedy for [plaintiffs'] contract claims, namely money damages, is identical to [their] requested remedy for the alleged constitutional violation." *Id.* at 605. Having disposed of all issues raised by the parties, the Court of Appeals affirmed the trial court's amended order granting in part and denying in part the Board's motion to dismiss.

The Board filed a petition for discretionary review pursuant to N.C.G.S. § 7A-31 asking this Court to review the Court of Appeals' rulings on plaintiffs' contract claims. We allowed the petition.[3]

## II.    Standard of Review

"Questions of law regarding the applicability of sovereign or governmental

---

[3] Plaintiffs did not file a petition for discretionary review of the Court of Appeals' ruling upholding the dismissal of their *Corum* claim. After oral argument, plaintiffs filed a conditional petition for writ of certiorari requesting review of the *Corum* ruling if this Court determines that the amended complaint fails to allege valid breach of contract claims. Inasmuch as we hold that the amended complaint states valid claims for breach of contract, we dismiss as moot the petition for writ of certiorari. Accordingly, plaintiffs' *Corum* claim is not before this Court.

immunity are reviewed de novo." *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 368 N.C. 609, 611 (2016). In other words, we "consider[ ] the matter anew and freely substitute[ ] our own judgment for that of the lower courts." *Town of Midland v. Harrell*, 385 N.C. 365, 370 (2023) (cleaned up).

We also review de novo a lower court's ruling on a motion to dismiss under Rule 12(b)(6). *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 448 (2015). Such a motion tests whether the complaint states a valid legal claim if its factual allegations are accepted as true. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). "When the complaint on its face reveals that no law supports the claim, reveals an absence of facts sufficient to make a valid claim, or discloses facts that necessarily defeat the claim, dismissal is proper." *Arnesen*, 368 N.C. at 448. On the other hand, our "system of notice pleading affords a sufficiently liberal construction of complaints so that few fail to survive a motion to dismiss." *Ladd v. Est. of Kellenberger*, 314 N.C. 477, 481 (1985). *See generally* N.C.G.S. § 1A-1, Rule 8(a) (requiring any pleading that sets forth a claim for relief to contain "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief").

### III. Analysis

The Board raises three main issues in its briefing to this Court. First, it argues that the fees for which plaintiffs seek refunds cannot be the subject of a contract

because state law required NCSU and UNC-CH to impose and collect them. Second, the Board contends that sovereign immunity bars plaintiffs' contract claims. Third, the Board insists that plaintiffs' contract claims cannot survive its Rule 12(b)(6) motion to dismiss "because [p]laintiffs pled facts that defeat them." Each of these arguments misses the mark.

## A. Statutory Mandate

The Board highlights several statutory provisions that govern the imposition of student fees. In particular, N.C.G.S. § 116-143(a) directs the Board to "fix the tuition and fees . . . at the [constituent] institutions of higher education . . . in such amount or amounts as it may deem best, taking into consideration the nature of each institution and program of study and the cost of equipment and maintenance." N.C.G.S. § 116-143(a) (2023). According to the Board, "[t]he University's imposition and collection of fees, pursuant to the General Assembly's mandate, constitutes the exercise of the University's governmental power and, therefore, cannot be the subject of a contract."

Furthermore, in the Board's view, the imposition and collection of mandatory student fees is analogous to the levying of taxes. The Board insists that "the government's levying of an assessment is the exercise of its sovereign power to raise revenue and fund government operations and advance public welfare, not the creation of a contract enforceable by a citizen." In support of its position, the Board cites *Tilghman v. West of New Bern Volunteer Fire Department*, 32 N.C. App. 767

(1977), wherein the Court of Appeals held that "[t]he collection of taxes by Craven County . . . under authority granted by the legislature constituted the exercise of a public and governmental power and as such [was] not and [could not] be the subject of a contract." *Id.* at 769.

It appears that the Board did not make its statutory mandate argument to the trial court. Likewise, the Board did not include the argument in its briefs to the Court of Appeals. Inasmuch as "the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court," we decline to consider this argument. *Weil v. Herring*, 207 N.C. 6, 10 (1934); *see also* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

## B. Sovereign Immunity

The Board maintains that sovereign immunity bars plaintiffs' breach of contract claims because "there can be no serious argument the General Assembly's requirement that [the Board] charge fees is a waiver of liability." The Board further argues that plaintiffs failed to allege a waiver of sovereign immunity because the amended complaint does not allege either an express contract or a contract implied in fact. Lastly, the Board asserts that, even if the amended complaint alleges an implied-in-fact contract, "North Carolina's appellate courts have previously only allowed an implied-in-fact contract to waive sovereign immunity in one limited context: where the State acts as an employer."

Subject to important limitations, the doctrine of sovereign immunity bars

lawsuits against the State except when the State has waived its immunity to suit.[4] *Smith v. Hefner*, 235 N.C. 1, 6 (1952). The State's sovereign immunity extends to the University of North Carolina. *See Orange County v. Heath*, 282 N.C. 292, 296 (1972) ("The State and its governmental units cannot be deprived of the sovereign attributes of immunity except by a clear waiver by the lawmaking body.").

Though rooted in the outdated notion that "the king could do no wrong," *Corum*, 330 N.C. at 785, today sovereign immunity reflects the judiciary's respect for the separation of powers between the legislative and the judicial branches. *See id.* ("It has been said that the present day doctrine [of sovereign immunity] seems to rest on a respect for the positions of two coequal branches of government—the legislature and the judiciary.").

The appropriations clause in the North Carolina Constitution provides that "[n]o money shall be drawn from the State treasury but in consequence of appropriations made by law." N.C. Const. art. V, § 7(1). "In drafting the appropriations clause, the framers sought to ensure that the people, through their elected representatives in the General Assembly, had full and exclusive control over

---

[4] In general, sovereign immunity will not bar claims against the State or its agencies for violations of an individual's rights under the North Carolina Constitution. *See Corum*, 330 N.C. at 785–86 ("The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the [North Carolina Constitution's] Declaration of Rights."). "In addition, under the federal cases interpreting [42 U.S.C. § 1983], sovereign immunity alleged under state law is not a permissible defense to section 1983 actions." *Id.* at 772 (citing *Martinez v. California*, 444 U.S. 277, 283 (1980)).

the allocation of the [S]tate's expenditures." *Cooper v. Berger*, 376 N.C. 22, 37 (2020). By narrowing the State's exposure to lawsuits, sovereign immunity reduces the chances that judgments entered against the State will significantly impair the General Assembly's authority to set spending priorities. *See Smith*, 289 N.C. at 322 ("With no limits on liability jury verdicts could conceivably impose an unanticipated strain upon the State's budget.").

Consistent with our respect for the separation of powers, we will not lightly infer waivers of sovereign immunity. *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537–38 (1983). In *Smith*, however, we reasoned "that whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages . . . in the event it breaches the contract." *Smith*, 289 N.C. at 320. In such circumstances, "the doctrine of sovereign immunity will not be a defense to the State." *Id.*

We predicted that our decision in *Smith* would not "result in any unseemly conflict between the legislative and judicial branches of the government." *Id.* at 321. For one thing, we did not "anticipate that [*Smith* would] have a significant impact upon the State treasury." *Id.* Inasmuch as the immunity waiver recognized in *Smith* was confined to contracts "authorized by law," the State could, "with a fair degree of accuracy, estimate the extent of liability for a breach of contract." *Id.* at 322; *see also Wray v. City of Greensboro*, 370 N.C. 41, 47 (2017) (noting that a valid contract waives the State's sovereign immunity only "to the extent of th[e] contract"). We further

clarified that, even if the *Smith* plaintiff proved his claim against the State, he could not "obtain execution to enforce the judgment." *Smith*, 289 N.C. at 321. "Satisfaction [of the judgment] w[ould] depend upon the manner in which the General Assembly discharge[d] its constitutional duties." *Id.*

"Because in contract actions the doctrine of sovereign immunity will not be a defense, a waiver of governmental immunity is implied, and effectively alleged, when the plaintiff pleads a contract claim." *Wray,* 370 N.C. at 48 (cleaned up). Ordinarily, this means that the complaint must allege offer, acceptance, and consideration. *See, e.g.*, *Dodds v. St. Louis Union Tr. Co.*, 205 N.C. 153, 156 (1933) ("In the formation of a contract[,] an offer and an acceptance are essential elements; they constitute the agreement of the parties."). To serve as the foundation for a valid contract, the offer must be intended to create legal obligations if accepted. *Yeager v. Dobbins*, 252 N.C. 824, 828 (1960). "It must not be . . . intended merely to open negotiations which will ultimately result in a contract . . . ." *Id.* Acceptance occurs only if the parties "assent to the same thing in the same sense, . . . and their minds must meet as to all the terms." *Dodds*, 205 N.C. at 156. Consideration is present if there is a benefit to the promisor or a detriment to the promisee. *Carolina Helicopter Corp. v. Realty Co.*, 263 N.C. 139, 147 (1964).

As noted above, the Court of Appeals held that plaintiffs successfully alleged the existence of an implied-in-fact contract. In a case not involving sovereign immunity, we declared that "an implied contract is as valid and enforceable as an

express contract." *Creech v. Melnik*, 347 N.C. 520, 526 (1998).

"[A] contract implied in fact arises where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts." *Id.* To determine whether an implied-in-fact contract exists, courts look to whether the parties' conduct would be understood to create legal obligations in "the ordinary course of dealing." *Snyder v. Freeman*, 300 N.C. 204, 217 (1980) (cleaned up). The existence of an implied-in-fact contract is usually obvious from the circumstances. In *Warren v. Dixon & Christopher Co.*, for example, an implied employment contract came about when the employer's foreman immediately put a pipefitter to work. 252 N.C. 534, 538 (1960).

The Court of Appeals erred in holding that the amended complaint alleges a contract implied in fact. Because this appeal stems from a Rule 12(b)(6) motion to dismiss, we must base our decision on the amended complaint's factual allegations. *Morris v. Rodeberg*, 385 N.C. 405, 406 (2023). As explained below, the amended complaint alleges the existence of express contracts between plaintiffs and the Board. Once parties enter an express agreement, there can be no implied contract between them covering the same subject matter. *Morganton Mfg. & Trading Co. v. Andrews*, 165 N.C. 285, 290 (1914). Thus, plaintiffs' allegations of express contracts necessarily defeat their effort on appeal to recast their lawsuit as one arising from the Board's breach of implied contracts.

After providing detailed descriptions of the mandatory fees charged by NCSU

and UNC-CH, the amended complaint alleges the following facts with respect to those

fees:

47. . . . [B]efore the beginning of their respective Fall 2020 Terms, NCSU and UNC-CH provided each student enrolled for their Fall 2020 Terms, including [p]laintiffs, an itemized bill which labeled, in writing, the services, benefits, and opportunities which NCSU and UNC-CH promised to provide in exchange for each student's, including each [p]laintiff's, payment of Fall 2020 Term Student Fees; those bills also specified the amount that each [p]laintiff and each other NCSU and UNC-CH student was required to pay for those services, benefits, and opportunities.

48. Following their receipt of the itemized bill for Fall Term 2020 Student Fees from NCSU and UNC-CH, each [p]laintiff made full payment to each of their respective Subject Constituent Institutions—NCSU and UNC-CH—for all Student Fees charged by NCSU and UNC-CH for the Fall 2020 Terms.

49. Before August 10, 2020, NCSU and UNC-CH, on behalf of [the Board], offered to [p]laintiffs and other prospective . . . students that if the prospective students registered for the Fall 2020 Terms and promised to pay the Student Fees for the Fall 2020 Terms, that they . . . would, in turn, receive the services, benefits, and opportunities of the Earmarked Components from NCSU and UNC-CH for the duration of the Fall 2020 Term; NCSU and UNC-CH, on behalf of [the Board], made this offer through their websites and through their billing communications with [p]laintiffs and other prospective . . . students . . . .

. . . .

98. As set forth above, [p]laintiffs . . . entered into *express contracts* with [the Board] in which: (1) NCSU and UNC-CH offered [p]laintiffs . . . the Earmarked Components composed of services, benefits, and opportunities and billed [p]laintiffs . . . for those

-18-

Earmarked Components; and (2) [p]laintiffs . . . accepted [the Board's] offer and agreed to pay, and did, in fact, pay, the Student Fees for such Earmarked Services.

(Emphasis added.)

Similarly, the amended complaint alleges these facts regarding plaintiffs'

parking permits:

> 108. Before the beginning of the Fall 2020 Terms, NCSU and UNC-CH offered to sell optional parking permits to [p]laintiffs and other Fall 2020 Term students which would permit the purchaser to park a motor vehicle in an on-campus parking lot during the Fall 2020 Terms.
>
> 109. Plaintiffs . . . accepted the offers of NCSU and UNC-CH and purchased such permits: Lannan paid NCSU $210 for his parking permit and Kuehn paid UNC-CH over $300 for her parking permit . . . .
>
> 110. As set forth above, [p]laintiffs . . . entered into *express contracts* with [the Board] through its Subject Constituent Institutions—NCSU and UNC-CH—in which: (1) NCSU and UNC-CH offered [p]laintiffs . . . on-campus motor vehicle parking permits; and (2) [p]laintiffs . . . accepted such offers and agreed to pay, and did, in fact, pay, to [the Board] through the respective Subject Constituent Institutions—NCSU and UNC-CH—fees for on-campus motor vehicle parking permits for the Fall 2020 Terms at NCSU and UNC-CH.

(Emphasis added.)

For both contract claims, the amended complaint alleges offer, acceptance, and

consideration. It asserts that the universities offered prospective students benefits in

the form of specified services and access to designated facilities in exchange for the

payment of certain fees. It further alleges that plaintiffs accepted the offer and paid

those fees. Likewise, the amended complaint alleges that the universities expressly offered the benefit of on-campus parking to students such as plaintiffs in exchange for the purchase of parking permits and that plaintiffs accepted the offer and purchased the permits. Under the lenient standards of notice pleading, the amended complaint sufficiently alleges that the Board—through two of its constituent institutions—entered into express contracts with plaintiffs. Accordingly, it also alleges waivers of the Board's sovereign immunity as to plaintiffs' claims for breach of contract. *See Smith*, 289 N.C. at 320 ("[I]n causes of action on contract . . . , the doctrine of sovereign immunity will not be a defense to the State.").

Having concluded that the amended complaint alleges a waiver of sovereign immunity based on express contracts, we need not consider whether or when a contract implied in fact can waive sovereign immunity. We therefore decline to resolve that issue.

## C. Adequacy of Contract Allegations

According to the Board, "[e]ven if [this] Court were to endorse the Court of Appeals' derogation of [the Board's] sovereign immunity and allow [p]laintiffs to proceed with their claims against [the Board] . . . , then [p]laintiffs' breach of contract claims would still fail under Rule 12(b)(6)." Specifically, in the Board's opinion, plaintiffs' "own allegations reveal that there was never any meeting of the minds to form a contract and are fatal to their claims." The Board contends that "[t]he very websites on which [p]laintiffs rely as a basis for their contract informed students that

the fees would not be refunded if [NCSU or UNC-CH] switched to remote instruction."[5] The Board also argues that the fee descriptions contained in the amended complaint "affirmatively show[ ] that many of the fees were paid not in exchange for personal services, but rather to fund debt services and the expansion and renovation of campus buildings."

Not surprisingly, having just held that the amended complaint successfully alleges express contracts, we reject these arguments. As we have repeatedly emphasized, the procedural posture of this case requires us to accept the amended complaint's factual allegations as true. *Morris*, 385 N.C. at 406. Plaintiffs could lose at a later stage, however, if the evidence produced in discovery confirms the Board's contention that they were not entitled to refunds.

Moreover, the Board correctly observes that many of the fee descriptions in the amended complaint lack any explicit promise to provide services to students who paid those fees. The description of the "Transit Operations Fee," for instance, merely says that "[t]his fee of $205.00 partially funds the campus transit system." Plaintiffs have overcome the Board's Rule 12(b)(6) motion because the amended complaint alleges other facts sufficient to establish the existence of express contracts between the

---

[5] The Board cites copies of website pages that it submitted to the trial court as exhibits to a memorandum of law. Although the amended complaint mentions websites, we cannot tell from its factual allegations whether the pages cited by the Board are the ones referred to in the amended complaint.

parties. To win at trial, plaintiffs will have to prove their allegations with evidence.[6]

## IV.    Conclusion

The amended complaint adequately alleges the existence of express contracts between plaintiffs and the Board. For this reason, sovereign immunity does not bar plaintiffs' alleged claims against the Board for breach of contract. Although the Court of Appeals rightly affirmed the trial court's denial of the Board's motion to dismiss those claims, it did so under the erroneous impression that the amended complaint alleges implied but not express contracts. We thus modify and affirm the judgment of the Court of Appeals.

MODIFIED AND AFFIRMED.

Justice BARRINGER did not participate in the consideration or decision of this case.

---

[6] We have not addressed whether the amended complaint sufficiently alleges that the Board breached its contracts with plaintiffs. The Court of Appeals considered the issue and held that, "[t]aking the alleged facts as true, . . . [p]laintiffs have properly alleged breach." *Lannan*, 285 N.C. App. at 602. Aside from a conclusory footnote, the Board ignored the breach issue in the briefs it filed with this Court. *See* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").